# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| OMAR SHARIFF CASH, | : |  |
|---|---|---|
| Plaintiff, | : |  |
|  | : |  |
| v. | : | NO. 18-cv-2114 |
|  | : |  |
| U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, | : |  |
| Defendants. | : |  |

## MEMORANDUM

**Joseph F. Leeson, Jr.**  May 30, 2018
**United States District Judge**

Plaintiff Omar Shariff Cash, a State inmate currently incarcerated at SCI Greene, has filed this civil action pursuant to 42 U.S.C. §§ 1983 & 1985 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against the United States Department of Homeland Security ("DHS"), former DHS Secretary John Kelly, current DHS Secretary Kristjen Nielsen, the Bensalem Township Police Department, Officer David Nieves, Jr., attorney Fabian Lima, and Gloria Michelle Hill, a language interpreter. He has also filed a Motion for Leave to Proceed *In Forma Pauperis*. (ECF No. 1.) For the following reasons, the Court will grant Cash leave to proceed *in forma pauperis* and will dismiss his Complaint.

## I. FACTS AND PROCEDURAL HISTORY

### A. Background for Cash's Claims

Cash "is currently serving an aggregate sentence of life in prison without the possibility of parole" after being convicted in the Court of Common Pleas for Bucks County, Pennsylvania, of "first-degree murder, carrying a firearm without a license, simple assault, and multiple counts each of robbery, rape, involuntary deviate sexual intercourse, kidnapping, and false

imprisonment." *Commonwealth v. Cash*, No. 478 EDA 2015, 2015 WL 9584932, at *1 (Pa. Super. Ct. Dec. 28, 2015).[1] On July 11, 2016, Cash filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in this Court. *See Cash v. Wetzel*, Civ. Action No. 16-3758.[2] In his Petition, Cash argued, *inter alia*, that "[t]he Commonwealth withheld and affirmatively misrepresented material evidence regarding the actual benefits [the rape victim] was expecting and received in exchange for her testimony, in violation of Petitioner's due process rights under the Sixth and Fourteenth Amendments to the United States Constitution." Mem. Supp. Pet. for Writ of Habeas Corpus at 19, *Cash v. Wetzel*, Civ. Action No. 16-3758 (ECF No. 1-2).

Magistrate Judge Hart subsequently appointed the Federal Community Defender's Office to represent Cash in his *habeas* proceedings. Order, *Cash v. Wetzel*, Civ. Action No. 16-3758 (ECF No. 9). On December 22, 2016, counsel filed a Motion for Discovery, seeking access to the victim's "so-called 'alien file,' maintained by the federal government, which likely contains previously undisclosed evidence regarding [the victim's] cooperation with authorities and the benefits she received for it." Mem. Supp. Mot. for Discovery at 2, *Cash v. Wetzel*, Civ. Action No. 16-3758 (ECF No. 11-1). Counsel sought this information "in aid of [Cash's] claim that the Commonwealth violated his due-process rights when it suppressed and misled regarding evidence of the aid it supplied to [the victim]." *Id.* at 1. By Order entered on January 19, 2017, Magistrate Judge Hart granted the Motion for Discovery. Order, *Cash v. Wetzel*, Civ. Action No. 16-3758 (ECF No. 17).

---

[1] Cash has also been sentenced to death after being convicted of first-degree murder in the Court of Common Pleas for Philadelphia. *See Commonwealth v. Cash*, 137 A.3d 1262, 1266 (Pa. 2016).

[2] Cash's habeas proceeding has been assigned to the Honorable Gene E.K. Pratter, United States District Judge, and the Honorable Jacob P. Hart, United States Magistrate Judge.

Two months later, counsel filed a Motion to Compel Production of Documents, arguing that DHS had refused to provide the victim's file "or even acknowledge its existence." Mem. Supp. Mot. to Compel at 1, *Cash v. Wetzel*, Civ. Action No. 16-3758 (ECF No. 20-1). Counsel requested that the Court order DHS to disclose the file or, alternatively, "to turn over the file to the Court, so that it may perform an *in camera* review for potentially relevant material." *Id.* DHS, as a non-party to the *habeas* proceedings, filed an opposition, arguing that "a federal statute prohibits and penalizes the disclosure [Cash] seeks and there is no applicable statutory exception." Mem. Opp. Mot. to Compel at 4, *Cash v. Wetzel*, Civ. Action No. 16-3758 (ECF No. 22).

On May 22, 2017, Magistrate Judge Hart entered a Report and Recommendation in which he recommended that the Motion to Compel be denied. Report and Recommendation at 1, *Cash v. Wetzel*, Civ. Action No. 16-3758 (ECF No. 30). Cash, through counsel, filed objections to the Report and Recommendation on June 7, 2017. Objections, *Cash v. Wetzel*, Civ. Action No. 16-3758 (ECF No. 31). The objections have yet to be ruled on because on June 23, 2017, counsel filed a Motion to Stay and Hold Proceedings in Abeyance pending the outcome of a state Post-Conviction Relief Act ("PCRA") petition that Cash had filed in the Court of Common Pleas for Bucks County. *Cash v. Wetzel*, Civ. Action No. 16-3758 (ECF No. 36). By Order entered on July 17, 2017, Magistrate Judge Hart granted the Motion to Stay and Hold Proceedings in Abeyance and directed that the matter be placed in civil suspense pending the disposition of Cash's PCRA petition. Order, *Cash v. Wetzel*, Civ. Action No. 16-3758 (ECF No. 40).

### B. Cash's Allegations

In the instant civil action, Cash alleges that on or about August 25, 2009, Hill, the language interpreter, requested that Officer Nieves "fill out a U-Nonimmigrant Certification

Form I-918 Supplement B on behalf of [the witness]." (Compl. at 2.) Officer Nieves agreed to do so, and received the Form I-918 Supplement B from attorney Lima on or about September 7, 2009. (*Id.*) He filled out the form and returned it to Lima. (*Id.*) On October 28, 2009, Lima "filed a U-Nonimmigrant Petition with the required Form I-918 Supplement B, U-Nonimmigrant Status Certification attached on behalf of" the witness. (*Id.*) The petition was filed "with the United States Customs and Immigration Services (USCIS), and was approved in April 2010." (*Id.*) According to Cash, DHS processed the petition "without conducting [its] own review to confirm [the victim's] eligibility via [its] own statutes and policies." (*Id.* at 3-4.) He also argues that its failure to do so "coupled with Defendants Nieves and Hill's conspiratorial acts allowed [the victim] to be able to submit a [petition] that did not reflect her illegal entry into the United States, and/or her history of prostitution, as Defendant Lima testified to on April 22, 2014." (*Id.* at 4.) Cash further asserts that DHS, Kelly, Nielsen, Nieves, Hill, and Lima conspired to commit visa fraud by submitting a falsified petition on behalf of the victim. (*Id.* at 4-5.)

Cash also references the fact that on May 24, 2017, Magistrate Judge Hart issued a Report and Recommendation in Cash's *habeas* proceedings, recommending that Cash's Motion to Compel be denied. (*Id.* at 3.) Subsequently, on August 1, 2017, Officer Nieves testified during a hearing held on Cash's PCRA petition in the Court of Common Pleas for Bucks County. (*Id.*) He testified that even though he was "not . . . a person identified in the DHS/USCIS [i]nstructions for I-918, Supplement B, U-Nonimmigrant Status Certification authorized to fill out said [form] he filled out said certification unbeknownst to his superiors and the prosecuting assistant district attorney at the behest of Defendant Hill and returned the only copy to Defendant Lima." (*Id.*) He also testified that the Bensalem Township Police Department "does not have a

4
053018

designated individual to fill out U-Nonimmigrant Certifications," despite the fact that the instructions require them to have such. (*Id.*)

Cash contends that Kelly and Nielsen have denied him access to the courts by refusing to disclose the victim's "alien file" and by "failing to implement a preventative and corrective disclosure process when DHS and USCIS's U-Nonimmigrant process is abused." (*Id.* at 5.) He further asserts that Officer Nieves and the Bensalem Township Police Department violated his rights through deliberate indifference and abuse of process when Officer Nieves filled out the Form I-918 Supplement B without authorization and when the Bensalem Township Police Department "failed to designate a person in a supervisory role to issue U-Nonimmigrant Status Certification on behalf of [its] agency." (*Id.*) Cash argues that DHS, Kelly, and Nielson also abused process by "making the U-Nonimmigrant process available to State/Local law enforcement officials absent any qualification requirements . . . and/or any internal screening process to safeguard" his constitutional rights. (*Id.* at 5-6.) He further contends that all Defendants conspired to violate his rights by "facilitating and approving an unauthorized issued Form I-918 Supplement B . . . which ultimately was an abuse of process and consequently [denied him] access to the court." (*Id.* at 6.) Finally, Cash claims that the actions of Kelly, Nielsen, Nieves, Hill, and Lima have "caused [him] anxiety, depression and paranoia constituting intentional infliction of emotional distress." (*Id.*)

As relief, Cash requests that the Court issue a declaratory judgment stating that: (1) the Defendants' actions violated his rights under the First, Sixth, Eighth, and Fourteenth Amendments and also constituted a conspiracy; (2) the actions and inactions of Kelly, DHS, Officer Nieves, and the Bensalem Township Police Department violated his rights under the First, Sixth, Eighth, and Fourteenth Amendments and constitute an abuse of process; (3) the

refusal of DHS, Kelly, and Nielsen to disclose the victim's "alien file" and their "failure to enact policies to remedy an abuser of [the] U-Nonimmigrant process" violated his rights under the First, Sixth, Eighth, and Fourteenth Amendments and constitute denial of access to the courts; and (4) the Defendants' actions constitute intentional infliction of emotional distress. (*Id.* at 6-7.) Cash also seeks an injunction that: (1) orders Nielsen and DHS to disclose a copy of the victim's "alien file" to him and/or his counsel in his *habeas* proceeding and to implement "an agency policy to prevent and remedy any/all abuses of the I-918 U-Nonimmigrant process," and (2) orders Officer Nieves and the Bensalem Township Police Department to "[i]mplement a policy to correspond with the instructions for Form I-918 Supplement B, U-Nonimmigrant Status Certifications," and to designate "a specific person in a supervisory role to issue [such] certifications." (*Id.* at 7.) Finally, Cash seeks compensatory and punitive damages. (*Id.*)

## II. STANDARD OF REVIEW

The Court will grant Cash leave to proceed *in forma pauperis* because it appears that he is not capable of paying the fees to commence this civil action.[3] Accordingly, Cash's Complaint is subject to 28 U.S.C. § 1915(e)(2)(B)(ii), which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements do not suffice." *Id.* The Court may also dismiss claims based on an affirmative defense if the affirmative defense is

---

[3] However, because Cash is a prisoner, he will be obligated to pay the $350.00 filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

obvious from the face of the complaint. *See Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002); *see also McPherson v. United States*, 392 F. App'x 938, 943 (3d Cir. 2010). Furthermore, the Court may also consider matters of public record. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). As Cash is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

### A. Claims Pursuant to 42 U.S.C. § 1985

Cash vaguely states that the Defendants' actions violated his rights under 42 U.S.C. § 1985. (Compl. at 1.) To state a claim under § 1985(2), a plaintiff

> must point to a federal or state proceeding with which the defendants have interfered. In the case of a state proceeding, he must allege that such interference was done to "deny to any citizen the equal protection of the laws." Otherwise, a claim under § 1985(2) must fail. Additionally, the Supreme Court of the United States has interpreted the second portion of § 1985(2) to require that the conspirators' actions in furtherance of their objective have some "racial, or perhaps otherwise class-based, invidiously discriminatory animus" and be "motivated by an intent to deprive their victims of the equal protection of the laws."

*Abuomar v. Commonwealth of Pa. Dep't of Corr.*, No. 4:14-CV-01036, 2017 WL 2972825, at *3 (M.D. Pa. July 12, 2017) (citations omitted). While Cash appears to suggest that the Defendants conspired to interfere in his state criminal proceedings, he fails to allege the type of race- or class-based discrimination required to state a claim under § 1985(2).

Moreover, "to state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir.

1997); *Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006) (explaining that "§ 1985(3) defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct"). Again, while Cash alleges that the Defendants have conspired against him, he fails to allege the type of race- or class-based discrimination that is required to state a claim under § 1985(3). Thus, Cash's § 1985 claims will be dismissed.[4]

### B. Claims Pursuant to 42 U.S.C. § 1983 and *Bivens*

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A *Bivens* action, which is the federal equivalent of the § 1983 cause of action against state actors, will lie where the defendant has violated the plaintiff's rights under color of federal law." *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001). As discussed below, Cash's Complaint does not allege a plausible claim for relief.

#### 1. Denial of Access to the Courts

Cash alleges that the Defendants have conspired to and have actually denied him access to the courts, in violation of the First, Sixth, Eighth, and Fourteenth Amendments, by refusing to disclose the witness's "alien file", thereby hindering his (and counsel's) ability to effectively litigate his *habeas* petition. "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). In order to state an access to the courts claim, Cash

---

[4] Section 1985(1) does not apply, as Cash is not an officer who was prevented from performing his duties by the Defendants.

> must show (1) that [he] suffered an "actual injury"—that [he] lost a chance to pursue a "nonfrivolous" or "arguable" underlying claim; and (2) that [he] has no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit." *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002). To that end, prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is "more than mere hope," and it must describe the "lost remedy."

*Monroe*, 536 F.3d at 205-06 (second internal citation omitted). With respect to the lost remedy, a prisoner must show how his claims "may no longer be pursued as a result of defendant's actions." *Id.* at 206 n.9.

Here, Cash has not shown that he has suffered an actual injury because he cannot demonstrate that he has no other remedy other than this present suit. *See id.* at 205-06. As noted above, Cash, through counsel, filed a Motion to Compel and, when that was unsuccessful, filed objections to Magistrate Judge Hart's Report and Recommendation regarding the Motion to Compel DHS to disclose the witness's "alien file." Objections, *Cash v. Wetzel*, Civ. Action No. 16-3758 (ECF No. 31). These objections are still pending because Cash's *habeas* proceedings have been stayed until disposition of his recently-filed PCRA petition in the Court of Common Pleas for Bucks County. Thus, Cash still has an opportunity to argue as to why DHS should be compelled to disclose the witness's "alien file." *See Wells v. Miller*, 652 F. App'x 874, 875 (11th Cir. 2016) (affirming dismissal of access to the courts claim because plaintiff did not show the absence of an adequate remedy at law because plaintiff admitted he could have sought appellate review); *cf. Cornett v. Donovan*, 51 F.3d 894, 898 (9th Cir. 1995) (concluding that the right of meaningful access only requires that an inmate not be impeded from *commencing* an action). Accordingly, Cash's access to the courts claim must be dismissed.[5]

---

[5] As noted above, Cash seeks injunctive relief in the form of, *inter alia*, an Order directing DHS and Nielsen to disclose a copy of the victim's "alien file" to him or to his counsel in *habeas* proceedings. However, "[w]here an adequate remedy at law exists, equitable relief will not be

### 2. Abuse of Process

Cash also contends that the Defendants conspired to commit abuse of process and committed abuse of process, violating his rights under the First, Sixth, Eighth, and Fourteenth Amendments, by facilitating and approving the submission of a "falsified" Form I-918 Supplement B, U-Nonimmigrant Status Certification, on behalf of the victim. (Compl. at 5-6.) The United States Court of Appeals for the Third Circuit has held that "a section 1983 [and *Bivens*] claim for malicious abuse of process lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law." *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989) (quoting *Jennings v. Shuman*, 567 F.2d 1213, 1217 (3d Cir. 1977)). The focus

> is not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends. Cognizable injury for abuse of process is limited to the harm caused by the misuse of process, and does not include harm (such as conviction and confinement) resulting from that process's being carried through to its lawful conclusion. Thus, one could no more seek compensatory damages for an outstanding criminal conviction in an action for abuse of process than in one for malicious prosecution.

*Heck v. Humphrey*, 512 U.S. 477, 486 n.5 (1994). To establish an abuse of process claim, "there must be some proof of a definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of [the] process." *Ference v. Twp. of Hamilton*, 538 F. Supp. 2d 785, 798 (D.N.J. 2008) (citations and internal quotation marks omitted).

---

granted." *Iacona v. United States*, 343 F. Supp. 600, 603 (E.D. Pa. 1972). Clearly, Cash fails to show that he has no adequate remedy at law, as he can continue litigating the issue of access to the victim's "alien file" in his *habeas* proceedings. *Cf. Bolin v. Story*, 225 F.3d 1234, 1242-43 & n.7 (11th Cir. 2000) (per curiam) (concluding that plaintiffs were not entitled to equitable relief where they could "appeal any rulings, or actions taken, in their criminal cases").

To the extent that an abuse of process claim can lie with respect to the administrative processing of immigration paperwork,[6] Cash lacks standing to bring such a claim. Here, Cash is not asserting that the Defendants abused the immigration process with respect to any paperwork submitted by him; rather, he is asserting that the process was abused with respect to the victim's paperwork. Cash lacks standing to pursue a claim on behalf of the victim and, even if the victim were a party to this case, Cash would not be able to represent her because a non-attorney proceeding *pro se* may not represent others in federal court. *See Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim (quotations omitted)); *Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991) (a pro se litigant who is not an attorney may not pursue claims on behalf of anyone other than himself).

To the extent that Cash raises any claims that the Defendants abused process during his criminal proceedings, such claims are not cognizable at this time. "[To] recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of

---

[6] The Court has not located any case law to suggest that such a claim is viable.

the prisoner's suit (state conduct leading to conviction or internal prison proceedings)— if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)); *Lora-Pena v. F.B.I.*, 529 F.3d 503, 505 n.2 (3d Cir. 2008) (per curiam) (noting that *Heck* has been applied to bar *Bivens* claims).

The docket reflects that Cash's convictions have not been reversed, expunged, or otherwise invalidated. Accordingly, any abuse of process claims that allege unconstitutional conviction or imprisonment as a result of the Defendants' conduct are not currently cognizable under § 1983 and *Bivens*. In other words, Cash cannot raise claims challenging the constitutionality of any aspect of the legal proceedings leading to his convictions. Therefore, the Court will dismiss any § 1983 and *Bivens* abuse of process claims for which Cash may have standing without prejudice to Cash filing a new complaint only in the event that his convictions and sentences are ever vacated.

### C. State Law Claims

Finally, Cash raises various tort claims, including abuse of process and intentional infliction of emotional distress, pursuant to state law. However, because the Court is dismissing all of Cash's federal claims, the Court declines to exercise supplemental jurisdiction over Cash's state law claims. *See* 28 U.S.C. § 1367(c)(3) (stating that "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction"); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well"); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (noting that "[w]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless

considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so"). Here, there is no reason to retain jurisdiction over Cash's state law claims. Thus, Cash's state law claims will be dismissed without prejudice to his right to raise them in state court.[7]

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Cash leave to proceed *in forma pauperis* and dismiss his Complaint for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Cash's claims challenging his convictions and sentences, which are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) will be dismissed without prejudice to his right to pursue them in a new lawsuit if and when his convictions are invalidated. Cash's state law claims will be dismissed without prejudice to his right to raise them in state court. Cash's remaining claims will be dismissed with prejudice. Cash will not be permitted to file an amended complaint, as amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). An appropriate Order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[7] The Court takes no position with respect to the merits or timeliness of any state law claims that Cash may raise.